UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MATTHEW T. WEAVER,<br><br>               Petitioner,<br><br>v.<br><br>ICIO WARDEN CARLIN,<br><br>               Respondent. | Case No. 3:10-cv-00295-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Previously in this habeas corpus matter, the Court granted Respondent's Motion for Partial Summary Dismissal, dismissing Claims One, Two, Three, and Five on procedural grounds. (Dkt. 19.) Respondent filed an Answer requesting dismissal or denial of Claim Four. (Dkt. 26.) The Court provided notice to Petitioner of his opportunity to file a reply in support of his Petition for Writ of Habeas corpus (Dkt. 28), but the 30-day deadline (March 8, 2013) has passed, and Petitioner has elected to file nothing further.

Having reviewed the record, including the state court record, the Court finds that the decisional process would not be significantly aided by oral argument. Therefore, the Court shall decide this matter on the written record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order dismissing the Petition for Writ of Habeas Corpus.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

Petitioner Matthew T. Weaver (Petitioner) and his wife, Frances Hall, were charged with and convicted by jury of felony injury to child, related to injuries to Frances's two-year-old son, in the Third Judicial District Court in Canyon County, Idaho. (State's Lodging A-1.) The issues at trial were whether one or both of the defendants were responsible for burning the child's lower back and buttocks by immersing him in extremely hot bath water or for causing a fracture of the child's elbow. Both parties were found guilty of felony injury to child. After serving time in prison, Petitioner was granted a new trial because of an erroneous jury instruction.[1] (State's Lodgings B-2 to B-4.)

Frances Hall's conviction was also vacated, and she decided to plead guilty the second time around, agreeing to testify against Petitioner at his second trial in exchange for a more lenient sentence and the State's agreement not to prosecute her for perjury based on testimony she gave at her first trial. (State's Lodging D-43, p. 5.)

Petitioner chose to represent himself at his second trial, was convicted of the charge, and was sentenced to a term of incarceration of eight years determinate with two years indeterminate (with credit for time served on the prior vacated conviction). (State's Lodgings C-1, p. 78; C-7, pp. 1268, 1285-88.)

On direct appeal, Petitioner's counsel, Greg Silvey, filed an opening brief for

---

[1] While Weaver's appeal was pending, the State filed a motion to remand the case for a new trial based upon the Idaho Supreme Court's decision in *State v. Young*, 64 P.3d 296 (2002), because the jury instruction found to be reversible error in *Young* was the same instruction used in Weaver's case. The motion was granted, and Weaver was afforded a new trial.

**MEMORANDUM DECISION AND ORDER - 2**

Petitioner. (State's Lodging D-4.) Petitioner disagreed with counsel's strategy on appeal, and Petitioner terminated the representation. (State's Lodging D-5.) Petitioner filed several pro se motions to augment the appellate record and to augment the appellate briefing. (State's Lodgings D-9, D-12, D-19, D-21, D-22, D-25.) Petitioner's motions to augment the record were denied, but Petitioner was permitted to file a supplemental brief addressing new claims not included in the appellate brief filed by counsel. (State's Lodging D-27.) Petitioner's supplemental brief raised 189 issues and subparts. (*Id.*; State's Lodgings D-43, p. 8.)

In addressing Petitioner's briefing, the Idaho Court of Appeals determined that Petitioner had waived all claims for which he failed to provide supporting argument in his supplemental brief. (The Court of Appeals made it clear that Petitioner did not have to provide legal citations, but only supporting argument in his brief.) (State's Lodging D-43, p. 8 n.2.)

The Idaho Court of Appeals addressed the merits of two claims raised in counsel's initial brief, and it addressed the merits of only five of 189 claims raised in the pro se supplemental brief: (1) whether Petitioner's waiver of counsel was valid; (2) whether the trial court erred in admitting evidence that Petitioner previously had been convicted of and served prison time for the same offense; (3) whether the trial court erred in denying Petitioner's motion to dismiss the indictment based upon instructional error at the grand jury proceedings; (4) whether the State was required to dismiss the indictment and "begin anew" after his case was remanded for retrial; (5) whether the trial court erred in denying

**MEMORANDUM DECISION AND ORDER - 3**

Petitioner's request to remove his squeaky leg restraint at trial to avoid having jurors hear or see it; (6) whether the state presented perjured testimony; and (7) whether the trial court erred by denying Petitioner's motion for funds to hire expert witnesses. (State's Lodging D-43.)

The Court of Appeals denied relief on all claims considered. (*Id.*) Petitioner filed a petition for review, motion to amend judgment, and brief. (State's Lodgings D-44 to D-46.) The Idaho Supreme Court denied the petition for review on April 9, 2008. (State's Lodging D-47.) The Court of Appeals issued its remittitur the same day. (State's Lodging D-48.)

On May 22, 2008, Petitioner filed an application for post-conviction relief in the state district court. (State's Lodging E-1, p. 1.) The application was dismissed on February 24, 2011. (State's Lodging E-1, p. 2.) Petitioner did not file an appeal.

Petitioner's current federal Petition for Writ of Habeas Corpus was filed on June 14, 2010. (Dkt. 3.) As noted above, all claims except Claim Four were dismissed on procedural grounds. Claim Four will be decided on the merits: whether the state district court permitted the State to present evidence to the jury and force Petitioner to wear restraints visible to the jury, contrary to a motion in limine that had been granted. Claim Four is based upon two factual grounds: (1) introduction of evidence that Petitioner was previously found guilty of the offense for which he was on trial; and (2) the requirement that Petitioner wear a full leg restraint, which squeaked and could be seen through his pants. (Petition, Dkt. 3-1, pp. 13-14.)

**MEMORANDUM DECISION AND ORDER - 4**

## RESPONDENT'S ARGUMENT THAT CLAIM FOUR
## IS PROCEDURALLY DEFAULTED

**1.    Standard of Law**

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." In such case, the Court construes the facts in a light most favorable to the petitioner. It is appropriate for the Court to take judicial notice of court dockets from state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it as a federal claim to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court cannot grant relief on that claim, although it does have the discretion to deny the claim. 28 U.S.C. § 2254(b)(2).

State remedies are considered technically exhausted, but not *properly* exhausted, if a petitioner failed to pursue a federal claim in state court and there are no remedies now available. *Boerckel,* 526 U.S. at 848. A claim may also be considered exhausted, though not properly exhausted, if a petitioner pursued a federal claim in state court, but the state

**MEMORANDUM DECISION AND ORDER - 5**

court rejected the claim on an independent and adequate state law procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 731-732 (1991). Under these circumstances, the claim is considered "procedurally defaulted." *Coleman,* 501 U.S. at 731. A procedurally defaulted claim will not be heard in federal court unless the petitioner shows either that there was legitimate cause for the default and that prejudice resulted from the default, or, alternatively, that the petitioner is actually innocent and a miscarriage of justice would occur if the federal claim is not heard. *Id.*

## 2.    Discussion

Petitioner alleges that it was prejudicial for the trial court to permit the State to introduce evidence that he was previously found guilty of the offense for which he was on trial and to require him to wear a leg restraint that squeaked and could be seen through his pants. Respondent first argues that Plaintiff has failed to state a constitutional or federal basis for these claims in his Petition. When faced with this argument on review of a habeas corpus petition prepared by a pro se prisoner, the Court liberally construes the petition and looks to the state court record to see which claims were presented there. The Court permits a pro se petitioner to proceed in habeas corpus on any constitutional or federal basis he presented to the state's highest court. This is where Respondent's alternative argument for dismissal comes in–that both subparts of Claim 4 are procedurally defaulted because they were *not* presented to the Idaho Supreme Court. Respondent did not include this argument in its previous Motion to Dismiss due to oversight (Dkt. 25, p. 7, n.1), but is not precluded from including it in the Response to the

**MEMORANDUM DECISION AND ORDER - 6**

Petition as a ground for dismissal.

Petitioner did argue that introduction of the past conviction impaired his constitutional right to the presumption of innocence. The Idaho Court of Appeals did not address the constitutional basis for the past conviction claim, but, instead, the court determined that claim on state law grounds. (State's Lodging D-43, pp. 6-7.) Petitioner did not present a constitutional basis for his leg restraint claim before the Idaho Court of Appeals.

A review of Petitioner's brief in support of his petition for review before the Idaho Supreme Court shows that Petitioner failed to present his claims as federal claims–he did not include theories that the presumption of innocence and due process were violated. (State's Lodging D-46, ¶ 71, §§ IIII-IV.) Petitioner argued only that he was prejudiced by the alleged state court evidentiary ruling. (*Id*.)

Accordingly, Claim 4 is procedurally defaulted in its entirety. Both Respondent and the Court previously provided Petitioner with the standards of law to meet the cause and prejudice or miscarriage of justice exceptions (Dkt. 19-1, 23), and Petitioner has not come forward with sufficient factual allegations to support application of either exception. Accordingly, these claims are subject to dismissal with prejudice. Notwithstanding the default, the Court will consider the merits of both subparts of Claim 4 in the alternative.

**MEMORANDUM DECISION AND ORDER - 7**

**RESPONDENT'S ARGUMENT THAT PETITIONER IS NOT ENTITLED
TO RELIEF ON THE MERITS OF CLAIM FOUR**

**1.      Discussion of the Claim that Petitioner's Constitutional Rights Were Violated
When the State District Court Permitted the Prosecutor to Use Evidence of
Petitioner's Prior Conviction of the Same Offense**

**A.      *Standard of Law***

Petitioner presented this claim to the Idaho Court of Appeals as both a state

evidentiary question of proper rebuttal evidence and a federal question of whether his

presumption of innocence rights were violated. While the Court has concluded that

Petitioner failed to present the claim as a federal claim to the Idaho Supreme Court, and,

hence, the claim is procedurally defaulted, the law permits the Court to also deny the

claim on its merits.

This Court reviews the claim de novo, under a presumption of innocence theory,

because Petitioner presented that argument to the Idaho Court of Appeals, but that court

did not address it, but instead addressed the claim only on state law evidentiary grounds.

(Dkt. 26, p. 11.) *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) ("when it is

clear that a state court has not reached the merits of a properly raised issue, [the federal

district court] must review it de novo" on federal habeas corpus review).

The first step in the analysis is to determine which law governs Petitioner's claim

that the "admission of the evidence that the defendant had already gone to prison and/or

been convicted violates the presumption of innocence." (State's Lodging D-4, p. 23.) On

appeal in state court, Petitioner analogized his claim to one in which a jury sees the

**MEMORANDUM DECISION AND ORDER - 8**

defendant in security restraints or jail clothing or becomes informed that the defendant was incarcerated or previously pleaded guilty but withdrew his plea. (*Id.*, pp. 23-33.) Petitioner relied on *Estelle v. Williams*, 425 U.S. 501(1976), as precedent governing the presumption of innocence issue.

The "presumption of innocence" is not expressly written in the Constitution. Because "one of the fundamental components of due process" is that the government bears the "burden of proving guilty beyond a reasonable doubt," *Monk v. Zelez*, 901 F.2d 885, 888 (10th Cir. 1990), the "presumption of innocence" has been called a "constitutionally rooted" principle. *See Cool v. United States*, 409 U.S. 100, 105 (1972) (the Court held that a jury instruction regarding the manner in which the jury should view accomplice testimony that had the effect of substantially reducing the government's burden of proof was "plainly inconsistent with the presumption of innocence," and, hence, the Court reversed the conviction.) *Id.* at 105.

In *Estelle v. Williams*, the Court determined that the dual purpose of the presumption of innocence is to protect the "requirements of finding guilt [1] only on the basis of the evidence and [2] beyond a reasonable doubt." 425 U.S. at 503. That Court further explained:

> To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 375 (1970).

**MEMORANDUM DECISION AND ORDER - 9**

> The actual impact of a particular practice on the judgment of jurors cannot always be fully determined. But this Court has left no doubt that the probability of deleterious effects on fundamental rights calls for close judicial scrutiny. *Estes v. Texas*, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955). Courts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience.

425 U.S. at 503-04.

**B.    *Discussion***

In this case, Petitioner sought, and the trial court granted, a motion in limine excluding evidence of Petitioner's prior conviction. (State's Lodging D-43, p. 5.) Several times prior to trial, Petitioner (who was proceeding pro se) told the court that he was trying to decide whether to present evidence to the jury that the Idaho Supreme Court had vacated his conviction. On appeal, the Idaho Court of Appeals carefully detailed the many times the trial court warned Petitioner that it may be harmful to his defense if he brought up his prior conviction. (State's Lodging D-43, pp. 5-7.) This Court will not repeat the entirety of the trial court's warnings here. Despite the trial court's warnings, Petitioner "injected his prior conviction and incarceration into the case by making it the central theme of his defense." (*Id*., p. 7.)

On habeas corpus review, it is important to note that a mere state law evidentiary error in admitting improper rebuttal evidence does not warrant relief. Rather, here, the question is whether the totality of the evidence shows that the jury likely did *not* find guilt based on the only the evidence in the record, and beyond a reasonable doubt, which

**MEMORANDUM DECISION AND ORDER - 10**

would violate the constitutional principle of the presumption of innocence.

The record shows that Petitioner clearly intended to use the past trial testimony, conviction, and imprisonment of *Frances Hall* to gain a tactical advantage at his second trial, well before the State argued to the court that Petitioner had opened the door to *his own* past convictions coming into evidence. The record also reflects that Petitioner also clearly intended to use the remand of the past case by the Idaho Supreme Court to his advantage.

In his opening statement, Petitioner said:

> I'm going to expose all the facts of the case openly to you. I will in no way hide or cover up facts, as well as I will not lie to you. I feel you are entitled to see the whole case.

> I was wrongfully incarcerated with Frances Hall. There is new evidence that proved beyond a reasonable doubt Frances Hall is guilty of the injuries– [end of sentence, due to an objection].

(State's Lodging C-8, p. 329.)

Upon cross-examining Detective Vail, Petitioner pursued the following lines of questioning to take tactical advantage of the prior conviction of his co-defendant:

> Q.    Did Frances go to prison for this charge, do you know?

> A.    Yes.

(C-8, p. 370.)

Shortly thereafter, the prosecutor asked for a bench conference, where she asserted that Petitioner opened the door to his and Frances's convictions, permitting the prosecutor

**MEMORANDUM DECISION AND ORDER - 11**

to address his conviction on rebuttal. (*Id.*, pp. 370-79.) The court then pre-determined that the prosecutor could ask on rebuttal a question that mirrored what Petitioner had asked the detective about Frances, which was, "Isn't it true Mr. Weaver also went to prison for this?," without reference to a conviction or a trial. (*Id.*, p. 375-77.)

After the bench conference and before the State had an opportunity for rebuttal, Petitioner himself introduced the topic of his own conviction on further direct examination of Detective Vail:

> Q.   Detective Vail, do people get wrongfully convicted?
>
> A.   Yes, they do.
>
> Q.   Detective Vail, did Frances pull me down with her?
>
> A.   Are you asking for an opinion, Mr. Weaver?
>
> Q.   Detective, let me rephrase that question. Did Frances Vail [sic], for the jury to hear, plead guilty, once again?
>
> A.   Yes.
>
> Q.   Have you ever or this court's ever heard me give any other plea except innocent?
>
> A.   Not that I'm aware of.
>
> Q.   Detective, do guilty people plead guilty?
>
> A.   Sometimes they do.
>
> Q.   So you're saying guilty people don't plead guilty? What –
>
> A.   Did I misunderstand your question?
>
> Q.   Okay. Let me rephrase the question. did the Supreme – do

**MEMORANDUM DECISION AND ORDER - 12**

you know if the Supreme court overturned –

A.     Overturned?

Q.     – my case?

A.     That's my understanding, that your case was overturned.

Q.     Do they overturn cases every day?

Prosecutor:   Objection, Your Honor. He has no foundation for this.

The Court:    Sustained. Sustained.

Q.     If the Supreme Court overturned a case, there's got to be a reason why they overturned it; is that correct?

A.     That's correct.

(C-8, pp. 383-84.)

When the prosecutor objected outside the presence of the jury that Petitioner had created a false impression that his conviction had been overturned by the Idaho Supreme Court on direct review because Petitioner was innocent, rather than because of an incorrect jury instruction, the court again pre-determined that the prosecutor shouldbe permitted to correct the record. (*Id*. at 385.)

Accordingly, before *any* rebuttal testimony was elicited, Petitioner had already (1) opened his defense case by referring to his "wrongful imprisonment," (2) elicited testimony from Detective Vail about Frances Hall's prior imprisonment, and (3) elicited testimony about the overturning of his conviction by the Idaho Supreme Court. Therefore, when this Court reviews the totality of evidence, it is clear that Petitioner introduced

**MEMORANDUM DECISION AND ORDER - 13**

much more of this type of evidence than the State did.

On rebuttal, the State elicited the following testimony from Detective Vail:

Q.    Detective, just a couple of more questions if I might. Do you know why the matter was overturned involving Mr. Weaver by the courts?

A.    All I've heard it was some technicality.

Q.    Do you know whether or not Ms. Frances Hall Weaver's conviction was also overturned?

A.    Yes.

Mr. Weaver:  I object, Your Honor. There's no record of her conviction being overturned.

The Court:    All right. I will sustain them at this time.

Prosecutor:   Thank you, Detective.

(C-8, p. 386.)

On re-cross examination, Petitioner again attempted to portray the Idaho Supreme

Court's remand of his case for trial in a light favorable to himself:

Q.    Detective Vail, did no mentioned [sic] a technicality?

A.    I mentioned what?

Q.    Did you mention the word "technicality"?

A.    Yes.

* * *

Q.     Do you believe in the Constitution of the United States of America, Detective?

Prosecutor:    The State would object to that as well, Your Honor. It's outside the

**MEMORANDUM DECISION AND ORDER - 14**

scope.

The Witness: Yes.

The Court:    Well, I'm going to permit it. Overruled.

The Witness: Yes, I do, Mr. Weaver.

Q.      Was the case unconstitutional?

A.      I don't know, Mr. Weaver. I don't know what the ruling was by the higher courts.

Q.      So there has been many a people have died in war, my family, your family, the jurors' family, throughout generations, fighting for the Constitution of America and for what it stands for. And you're saying it's a technicality, slapping all these people in the face? Technicality. The Constitution is not a technicality. It is America. Do you agree?

A.      Yes.

(C-8, pp. 387-88.)

Later, Petitioner elicited testimony from Frances Hall regarding where she and he

had been for the past five years:

Q.      It just doesn't add up with physics, Frances, in the time frame there. So for five years we were separated, correct? Not living in the same residence?

A.      We were both incarcerated, yes.

Q.      So for five years I was not around you. This is the first time I've seen you, would you say, in five years?

A.      No, That's not accurate.

Q.      Besides like maybe a couple weeks ago at court here, you showed up at court? So in roughly five years, this is the first time I've seen you?

**MEMORANDUM DECISION AND ORDER - 15**

> A.      Yes, but you've made phone calls from prison to prison.
>
> Q.      But this is the first time I've seen you in five years?
>
> A.      Yes.

(C-8, p. 961.)

In closing, Petitioner argued that the reason some of his character witnesses had

difficulty recognizing him was because he had been imprisoned:

> Some of these witnesses, as you noticed, have not seen me in years. They didn't even recognize me, I've been in prison for so long. Why would they have a reason to come in here and lie when they haven't seen me for years and years and years?

(C-8, p. 1097.)

In addition, Petitioner argued at closing:

> You heard Frances. I made her read her testimony; we bought the trailer together. That's a lie. The men told you–they haven't seen me in years and years and years because I've been locked up–that I bought the trailer prior to marriage.

(C-8, p. 1102.)

Petitioner also argued:

> I've done five years in prison. Wrongfully, innocently. I am an innocent man. I have proved their case to be lies. I've proved most of them to be liars.

(C-8, p. 1108.)

In contrast, the prosecutor mentioned Frances Halls' prior imprisonment but did

not mention the prior imprisonment or conviction of Petitioner during closing argument

(C-8, pp. 1080-1093). Moreover, the entire record reflects that the State relied on factual

**MEMORANDUM DECISION AND ORDER - 16**

witnesses, expert witnesses, and physical evidence to meet its burden of proof; other than the brief mention of Petitioner's Idaho Supreme Court remand, the State did not reference or rely on Petitioner's prior conviction, imprisonment, or trial. (C-8.)

The presumption of innocence analysis in *Estelle v. Williams* is based on a totality of circumstances analysis–does the evidence show that the jury likely did not find guilt (1) based on only the evidence in the record, and (2) beyond a reasonable doubt?

Petitioner's claim fails because it was he, not the State, who wove the past conviction, imprisonment, and criminal case into the fabric of his defense. In other words, the "evidence in the record" included the past conviction and imprisonment because Petitioner was the first and greatest purveyor of that information to the jury. Petitioner made extensive references to the past trial to show that the child witnesses, D.G. and K.G., and the mother, Frances Hall, had large deviations in their testimony at the second trial. The theme of Petitioner's case was that (1) he was wrongfully convicted and wrongfully imprisoned, as demonstrated by the Idaho Supreme Court's ruling in that case, and that (2) the second trial was his opportunity to vindicate himself.

Despite Petitioner's plan of action–to use all aspects of the prior case to his advantage–he objected to the State using that same information. The brief rebuttal testimony about the Idaho Supreme Court's remand of Petitioner's prior case that the prosecutor elicited from Detective Vail was insignificant in comparison to Petitioner's references to his past case. Therefore, based on the totality of the evidence, the court's decision to let in testimony that merely mirrored Petitioner's opening argument,

**MEMORANDUM DECISION AND ORDER - 17**

questioning of witnesses, and closing argument did not work to violate his right to the presumption of innocence either by inviting the jury to make its decision based on evidence outside the record, or by tipping the scales toward the State on its burden to prove Petitioner's guilt beyond a reasonable doubt. Because the decision of the Idaho Court of Appeals not to grant Petitioner relief on any grounds asserted in his appellate briefing is not contrary to United States Supreme Court precedent governing the presumption of innocence, federal habeas corpus relief is not warranted.

2.   **Discussion of the Claim that Petitioner's Constitutional Rights Were Violated When He Was Forced to Wear a Full Leg Restraint that Squeaked and Could Be Seen Through his Pants**

    A.   *Standard of Law*

The Idaho Court of Appeals addressed Petitioner's claim that he was "prejudiced" when he was forced to wear a leg restraint at trial. Therefore, the proper standard is not one of de novo review, but the § 2254 standard.

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment only when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act (AEDPA), federal habeas corpus relief is further limited to instances where the state court adjudication of the merits:[2]

_____

[2]A state court need not "give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011).

**MEMORANDUM DECISION AND ORDER - 18**

1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test. Under the first test, for a decision to be "contrary to" clearly established federal law, the petitioner must show that the state court applied "a rule of law different from the governing law set forth in United States Supreme Court precedent, or that the state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from the Court's precedent." *Williams v. Taylor*, 529 U.S. 362, 404-06 (2000).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court was "unreasonable in applying the governing legal principle to the facts of the case." *Williams*, 529 U.S. at 413. A federal court cannot grant relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell v. Cone*, 535 U.S. 685, 694 (2002). The state court need not cite or even be aware of the controlling United States Supreme Court decision to be entitled to AEDPA deference.

**MEMORANDUM DECISION AND ORDER - 19**

*Early v. Packer*, 537 U.S. 3, 8 (2002).

Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit law may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

A federal habeas court can look only to the record before the state court in reviewing a state court decision under section 2254(d)(1). *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court.") (footnote omitted); *Holland v. Jackson*, 542 U.S. 649, 652 (2004) ("[W]e have made clear that whether a state courts decision was unreasonable must be assessed in light of the record the court had before it.") (citations omitted). On habeas review, state court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A defendant can challenge the use of security restraints at trial "under the Fifth and Fourteenth Amendments' due process guarantee." *Deck v. Missouri*, 544 U.S. 622 (2005). By 2008, at the time the Idaho Court of Appeals rendered its decision, as well as at the time the Idaho Supreme Court denied Petitioner's petition for review, *Deck v. Missouri* was the prevailing law. (State's Lodgings D-43, 47.) In *Deck*, faced with the issue of whether Petitioner's due process rights were violated when he was shackled at the penalty

**MEMORANDUM DECISION AND ORDER - 20**

phase of a capital case, the United States Supreme Court concluded that, "given the[] prejudicial effect [of shackles], due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case." (*Id*. at 632.)

The Supreme Court particularly noted:

> The constitutional requirement, however, is not absolute. It permits a judge, in the exercise of his or her discretion, to take account of special circumstances, including security concerns, that may call for shackling. In so doing, it accommodates the important need to protect the courtroom and its occupants. But any such determination must be case specific; that is to say, it should reflect particular concerns, say, special security needs or escape risks, related to the defendant on trial.

*Id*. at 633.

In *Crittenden v. Ayers*, 624 F.3d 943 (9th Cir. 2010), the United States Court of Appeals for the Ninth Circuit addressed the *Deck* standard, particularly noting that the United States Supreme Court did not require the lower courts to "weigh the benefits and burdens of shackling or consider less restrictive alternatives." In *Crittenden*, the trial court held a hearing, and then determined that shackling was appropriate due to Mr. Crittenden's "prior escape, escape attempt, the nature of charges, and his athleticism." *Id*. at 972.

The *Crittenden* Court contrasted the state court's findings with the circumstance in *Deck:*

> In contrast, in *Deck*, the trial court judge did not make formal or informal findings on the record, and did not refer to any escape risk or threat to courtroom security. 544 U.S. at 634. The trial court judge gave as

**MEMORANDUM DECISION AND ORDER - 21**

explanation for Deck's shackling in the penalty phase only that he "had been convicted." *Id*. The Court concluded that the trial judge had not properly explained why shackles were necessary. *Id*. at 634-35.

*Crittenden*, 624 F.3d at 972 n.20.

In *Larson v. Palmateer*, 515 F.3d 1057 (9th Cir. 2008), the jury saw the defendant's leg shackles, and, when the shackles were removed in the midst of the trial, the Court commented to the jury that the defendant had previously been wearing the shackle for security reasons, and he would no longer be wearing it, due to a leg impairment of the defendant. *Id*. at 1062. Because the record reflected no justification for the visible leg shackle to be used during the first two days of trial, the Ninth Circuit agreed that the defendant's "due process rights were violated when the trial court failed to make a finding on the record justifying the necessity of physical restraints. . . ." *Id*. at 1063. The Ninth Circuit went on to determine, however, that, based on the record, the error did not have a substantial and injurious effect or influence in determining the jury's verdict under the harmless error standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

Finally, in *Ghent v. Woodford*, 279 F.3d 1121 (9th Cir. 2002), a pre-*Deck* case, the Ninth Circuit determined that, "[i]n order for a defendant to prevail on a claim of this nature, a court must find that the defendant was indeed physically restrained in the presence of the jury, that the shackling was seen by the jury, and that the physical restraint was not justified by state interests." *Id*. at 1132. In addition, the defendant must show prejudice (harmful error). *Id*.

**MEMORANDUM DECISION AND ORDER - 22**

After reviewing the evidentiary hearing transcript on appeal and considering the arguments of the parties in *Ghent*, the United States Court of Appeals for the Ninth Circuit determined:

> The evidence suggests that a few jurors at most glimpsed Ghent in shackles in the hallway and as he was entering the courtroom. The jury's "brief or inadvertent glimpse" of a shackled defendant is not inherently or presumptively prejudicial, nor has Ghent made a sufficient showing of actual prejudice.

279 F.3d at 1133. *See also Williams v. Woodford*, 384 F.3d 567, 592 (9th Cir. 2002) ("Even if we assume that Williams's physical restraints at trial were unjustified, we conclude that the district court properly held that the error was harmless. When the jury never saw the defendant's shackles in the courtroom, we have held that the shackles did not prejudice the defendant's right to a fair trial.").

### C.    *State Court Proceedings*

Before Petitioner's second trial, the state district court held a hearing on Petitioner's motion that he "not be prejudiced in handcuffs, restraints that jurors or any potential jurors could see, causing prejudice." (State's Lodging C-8, p. 275.) At the hearing, the Court stated that Petitioner would not be handcuffed, but a deputy stated that Petitioner would be wearing a leg restraint under his clothing at trial, but there would not be any "visible restraint." (*Id.*) The Court also clarified that Petitioner would not be wearing belly chains. (*Id.*, p. 277.)

Petitioner, who chose to represent himself at trial, argued that he should not be required to wear a leg restraint, because it made it difficult for him to walk around in the

**MEMORANDUM DECISION AND ORDER - 23**

same manner that the prosecution would be able to walk around the court room. (*Id.*, pp.

275-76.) He also argued that the leg restraint might lock or malfunction. (*Id.*)

The district court decided:

> Like I said, we'll cross that bridge when we come to it [meaning
> determining what to do if the leg restraint locked during the trial]. It's going
> to be under your clothes. There's no reason, unless you draw attention to it,
> that the jury is going to know about it. So if you invite the problem, then it's
> going to be your problem.

(*Id.*, p. 276.) In addition, the deputy clarified that the two persons who would accompany

Petitioner from the jail and remain with him at trial would be in plain clothes, rather than

law enforcement uniforms. (*Id.*, p. 278.)

On the first day of trial, the state district court asked Petitioner how the leg

restraint was working. (*Id.*, p. 299.) Petitioner reported that it squeaked when he walked

and had the potential to lock. (*Id.*) The Court informed the prosecutor that she would be

limited to speaking from the podium, because Petitioner would be limited to speaking

from the podium, given that Petitioner would not be able to move about the well without

the leg restraint squeaking. (*Id.*, pp. 299-300.)

The judge then asked Petitioner to demonstrate the squeaking by walking around a

little bit. (*Id.*, p. 300.) Petitioner did so, and asked, "Do you hear it squeaking?" The judge

replied: "Not really. I mean, not that I would know what it was." (*Id.*) When Petitioner

walked around more, the Court indicated that the squeaking could be heard. (*Id.*) The

judge then asked if there was not an alternative available, like a stun belt. (*Id.*, p. 301.)

Because the jail did not have another form of restraint, the Court then noted that the

**MEMORANDUM DECISION AND ORDER - 24**

bailiff would be used to hand both the prosecutor and Petitioner the exhibits, to avoid

unnecessary movement of Petitioner, which would cause the leg restraint to squeak. (*Id.*,

pp. 301-02.)

In this case, Petitioner has pointed to no part of the trial court record that reflects

the jurors had notice of the squeaking or suspected a leg restraint was used.

On appeal, the Idaho Court of Appeals addressed the claim in this manner:

> Weaver also asserts that the district court erred by denying his
> motion to remove his squeaky legal restraint at trial, thus revealing to the
> jury that he was a jail inmate during the trial. The record indicates that the
> restrain was worn under Weaver's clothing, but made some noise when he
> walked. To alleviate the possibility of the jury hearing the noise, the district
> court confined Weaver to the podium when questioning witnesses and
> imposed this same restriction on the prosecution.
>
> In *State v. Miller*, 131 Idaho 288, 293, 955 P.2d 603, 608 (Ct. App.
> 1997), this court held that "[i]t is axiomatic . . . that in order for the
> defendant to assert that he or she was prejudiced by the restraints, there
> must be some evidence that the jury saw the restraints and thereby drew a
> conclusion regarding the defendant's character. As Weaver points to no
> place in the record showing that the existence of the leg brace was revealed
> to the jury, his claim fails for a lack of showing of prejudice.

(State's Lodging D-43, p. 9.)

**D.**     *Discussion*

The question on habeas review is whether the decision of the Idaho Court of

Appeals is contrary to, or an unreasonable application of, United States Supreme Court

precedent. Here, there was no visible leg restraint, but an audible squeak, heard by the

judge before trial. The judge determined that the leg restraint was necessary–although

there are no findings–and that the best way to lessen the chance of the jury hearing the

**MEMORANDUM DECISION AND ORDER - 25**

squeak was to limit both parties' movement in the courtroom. Petitioner presented no evidence whatsoever that the jury became aware during trial that Petitioner was wearing a leg restraint.

Therefore, Petitioner has failed to show that he meets the standard for relief under § 2254, because *Deck* requires that the jury *know* about the restraint–either by seeing or hearing it. If no such evidence exists, then the habeas court need not reach the question of whether the trial judge did or did not properly explain on the record why the restraints were necessary. Ninth Circuit case law applying *Deck* is not to the contrary. Accordingly, this claim fails to warrant habeas corpus relief.

As a result of all of the foregoing, the Petition for Writ of Habeas Corpus will be denied and dismissed with prejudice.

## REVIEW OF THE CLAIMS AND THE COURT'S DECISION
## FOR PURPOSES OF CERTIFICATE OF APPEALABILITY

In the event Petitioner files a notice of appeal from the Order and Judgment in this case, the Court now evaluates the claims within the Petition for suitability for issuance of a certificate of appealability (COA), which is required before a habeas corpus appeal can proceed. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could

**MEMORANDUM DECISION AND ORDER - 26**

debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.*" Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed a petition or claim on procedural grounds, in addition to showing that the petition "states a valid claim of the denial of a constitutional right," as explained above, the petitioner must also show that reasonable jurists would find debatable whether the court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336.

Here, the Court has dismissed Petitioner's claims on procedural grounds, and some have been alternatively denied on the merits. The Court finds that additional briefing on the COA is not necessary. Having reviewed the record again, the Court concludes that reasonable jurists would not find debatable the Court's decision on the procedural issues and the merits of the claims raised in the Petition and that the issues presented are not adequate to deserve encouragement to proceed further. As a result, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit,

**MEMORANDUM DECISION AND ORDER - 27**

Petitioner must file a notice of appeal in this Court **within thirty (30) days after entry of this Order**, and he may file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b)(2).

## ORDER

**IT IS  ORDERED:**

1.  The Petition for Writ of Habeas Corpus (Dkt. 3) is DENIED and DISMISSED with prejudice.

2.  The Court will not grant a Certificate of Appealability in this case. If Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to forward a copy of this Order, the record in this case, and Petitioner's notice of appeal, to the United States Court of Appeals for the Ninth Circuit.

DATED:  **April 29, 2013**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 28**